LIU, J.,
Concurring.—I agree with the results the court reaches today. But as to the holding that California Constitution, article I, section 19, subdivision (a) (hereafter article I, section 19(a)) does not require the Department of Water Resources (Department) to initiate a classic condemnation proceeding before conducting its proposed environmental and geological testing activities, I am not persuaded by the court’s reasoning and would reach this holding on different grounds.
In this case, the Department sought judicial authorization under the precon-demnation entry and testing statutes (Code Civ. Proc., §§ 1245.010-1245.060) to engage in certain environmental and geological testing activities as a preliminary step to possibly condemning property for use in new water conveyance facilities. The question is whether such activities and the statutory procedures that authorize them are consistent with article I, section 19(a), which states: “Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first *214 been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation.”
Today’s opinion says the second sentence of this provision authorizes a public agency to conduct testing activities that may result in taking or damage to property without first paying the owner, so long as certain protections enacted by the Legislature are observed. (Maj. opn., ante, at pp. 201-202 [‘“[Ajlthough the second sentence of article I, section 19, subdivision (a) of the California Constitution may not have been drafted with the precondemnation setting in mind, in fashioning the precondemnation entry and testing statutes the Legislature, acting under the authority granted by that sentence, has provided comparable protections to the property owner so as to satisfy the requirements of the state takings clause.”].) By its plain terms, the second sentence of article I, section 19(a) speaks of legislatively enacted procedures that apply ‘“following commencement of eminent domain proceedings.” In the court’s view, a petition to obtain an order for precon-demnation testing (Code Civ. Proc., § 1245.030) is an “ ‘eminent domain proceeding’ ” within the meaning of article I, section 19(a). (Maj. opn., ante, at p. 201, fn. 20.) I respectfully disagree.
When construing a constitutional provision, “ ‘[i]t is to be presumed, in the absence of anything in the context to the contrary, that the words were used in the ordinary acceptation and as defined by the statutes in force at the time.’ ” (State M. B. & L. Assn. v. Los Angeles (1939) 30 Cal.App.2d 383, 385 [86 P.2d 372].) Under the Eminent Domain Law, ‘“[a]n eminent domain proceeding is commenced by filing a complaint with the court.” (Code Civ. Proc., § 1250.110.) The filing of a complaint initiates a condemnation proceeding, and the public agency is required to give any interested persons a clear description of ‘“the property sought to be taken.” {Id., § 1250.120, subd. (b).) This was the meaning of the phrase ‘“commencement of eminent domain proceedings” at the time of article I, section 19’s enactment in its current form in 1974. (See Mt. San Jacinto Community College Dist. v. Superior Court (2007) 40 Cal.4th 648, 657 [54 Cal.Rptr.3d 752, 151 P.3d 1166].) The Eminent Domain Law referred to a ‘“proceeding in eminent domain” as a proceeding in which a complaint is filed to condemn property. (See Code Civ. Proc., former § 1243, as amended by Stats. 1963, ch. 70, § 1, p. 698; Code Civ. Proc., former § 1243.4, added by Stats. 1961, ch. 1613, § 1, p. 3442; Code Civ. Proc., former § 1243.5, added by Stats. 1957, ch. 1508, § 1, p. 2840.) When the Legislature reenacted the Eminent Domain Law in its present form in 1975 (Stats. 1975, ch. 1275, § 2, p. 3409) shortly after the enactment of article I, section 19(a), it was presumably aware of that constitutional provision and used the term ‘“eminent domain proceeding” with *215 that provision in mind. (See California Housing Finance Agency v. Elliott (1976) 17 Cal.3d 575, 595 [131 Cal.Rptr. 361, 551 P.2d 1193].)
A petition to enter property for precondemnation activities pursuant to Code of Civil Procedure section 1245.030 is by definition not an action to condemn property, and it is therefore not the commencement of an “eminent domain proceeding” as that term has long been used in statute. Further, there is no indication that the term means something different in article I, section 19(a). To the contrary, article I, section 19(a) uses the term “eminent domain proceeding” in the same sense as the Eminent Domain Law does. As the court acknowledges, the second sentence of article I, section 19(a) “was adopted primarily to give the Legislature broad authority to enact a so-called quick take statutory procedure that fairly protects the interests of both public entities and property owners. [Citations.] Through the current statutory quick take procedure (§ 1255.010 et seq.), a public entity that has already determined that it intends to acquire a specific property for public use may, after taking the steps necessary to commence a classic condemnation action, obtain exclusive possession of the property and begin construction of the project before the typically lengthy classic condemnation action has fully run its course and a jury determination of just compensation has been made.” (Maj. opn., ante, at pp. 188-189, italics added.)
The court says that because the Legislature has made the precondemnation statutes a part of the Eminent Domain Law, a petition to gain precondemnation entry for testing activities qualifies as the commencement of an eminent domain proceeding. (Maj. opn., ante, at p. 201, fn. 20.) But the court cites nothing to rebut the presumption that the Legislature and those who enacted the constitutional provision had a common understanding of that term. Against the backdrop of settled usage equating an “eminent domain proceeding” with a classic condemnation action, it is unpersuasive to infer that the Legislature intended a precondemnation action to qualify as an eminent domain proceeding without some specific indication to that effect. Neither the fact that the precondemnation statutes are part of the Eminent Domain Law nor the fact that the California Law Revision Commission made the general statement, without mentioning the precondemnation statutes, that the Eminent Domain Law was “ ‘intended to supply rules for eminent domain proceedings’ ” (maj. opn., ante, at p. 201, fn. 20, citing Recommendation Proposing The Eminent Domain Law (Dec. 1975) 13 Cal. Law Revision Com. Rep. (1976) p. 1009, fn. 2) provides a firm basis for inferring the Legislature’s intent to alter the consistent meaning of “eminent domain proceeding” that the statute itself has stated in its many iterations. (Code Civ. Proc., §§ 1250.110, 1250.120; id., former §§ 1243 [as amended in 1963], 1243.4 [enacted in 1961], 1243.5 [enacted in 1957].)
*216 Indeed, in the report cited by the court, the commission said in its comments on Code of Civil Procedure section 1245.010: “Although appraisal and suitability studies generally precede the commencement of the eminent domain proceeding, Section 1245.010 does not preclude such studies after the proceeding to acquire the property has been commenced.” (Recommendation Proposing The Eminent Domain Law, supra, 13 Cal. Law Revision Com. Rep. at p. 1119, italics added.) Thus, the commission understood the term “eminent domain proceedings” in the conventional sense to mean a “proceeding to acquire . . . property” and as something distinct from the commencement of “appraisal and suitability studies” in the precondemnation statutes. (Ibid.)
Instead of trying to shoehorn the precondemnation procedure into the second sentence of article I, section 19(a), I would hold that article I, section 19(a)’s requirement that a public agency commence a classic condemnation proceeding before taking property does not apply to situations where there is genuine uncertainty as to whether or to what extent a taking or any damage will occur. The purpose of California’s takings clause is not to prevent the government from undertaking legitimate activities, but to ensure that the government pays just compensation if those activities result in a taking or damage to property. Article I, section 19(a) could not have been intended to require the impossible: It could not have been intended to require a jury ascertainment of just compensation where the extent of any taking or damage is uncertain before the government actually undertakes its proposed activities. In contrast to a classic condemnation action, which requires the government to know and to clearly specify what property will be taken (Code Civ. Proc., § 1250.310, subd. (b)), a proceeding to authorize precondemnation testing activities often presents circumstances where the extent of any taking or damage will be unclear until the activities are completed. In such circumstances, the entry and testing activities authorized by the precondemnation statutes do not require the commencement of a classic condemnation proceeding.
In this case, the trial court’s order authorizing the Department to enter the property and conduct environmental testing activities provided a maximum number of days that the Department had a right of entry and a range of activities that the Department could undertake. (Maj. opn., ante, at p. 170.) It was uncertain at the time the order was entered how many days the Department would actually enter each property, precisely what activities it would undertake, and whether and to what extent those activities would damage the property or substantially interfere with its use. Similarly, the extent of any taking or damage to property resulting from the proposed geological testing activities was uncertain at the time the trial court entered its order. In enacting an orderly process to provide for both legitimate government testing activities and just compensation in the face of such *217 uncertainties, the Legislature addressed circumstances to which the second sentence of article I, section 19(a) does not apply. Accordingly, the Department was not required to commence classic condemnation proceedings before conducting its testing activities. It could defer compensation to the property owner in the manner provided in the precondemnation statutes.
In all other respects, I join the court’s opinion.